IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SARA LEE CORPORATION,<br><br>                      Plaintiff,<br><br>vs.<br><br>SYCAMORE FAMILY BAKERY INC., and LELAND SYCAMORE<br><br>                      Defendants. | MEMORANDUM DECISION AND ORDER GRANTING PRELIMINARY INJUNCTION<br><br>Case No.  2:09CV523DAK |

This matter is before the court on Plaintiff Sara Lee Corporation's ("Sara Lee") Motion for Preliminary Injunction.  The court held a hearing on the motion on October 6, 2009.  At the hearing, Plaintiff was represented by Charles A. Burke and Margaret Niver McGann, and Defendants Sycamore Family Bakery Inc. ("Sycamore Family Bakery") and Leland Sycamore ("Sycamore") were represented by Heather L. McCloskey and J. Andrew Sjoblom.  After carefully considering the parties' arguments and submissions, as well as the law and facts relevant to the motion, the court enters the following Findings of Fact, Conclusions of Law, and Order.

I.  FINDINGS OF FACT

Sycamore developed the first commercially successful "homemade bread," a product which is now known as Grandma Sycamore's Home Maid Bread, at Aaron Bakery, Inc. ("Aaron Bakery").  Sycamore obtained federal registrations for the word mark GRANDMA

SYCAMORE'S HOME MAID BREAD and GRANDMA SYCAMORE'S HOME MAID BREAD & Design for use with bread, rolls, and bakery products (collectively, the "GRANDMA SYCAMORE'S Marks").

In 1998, Sycamore sold to Sara Lee's predecessor-in-interest, Metz Baking Company ("Metz"), certain assets of Aaron Bakery, including the GRANDMA SYCAMORE'S Marks, all goodwill of the business, and trade secrets. In connection with the sale, Sycamore assigned all right, title, and interest in and to the GRANDMA SYCAMORE'S Marks to Metz. Concurrent with this assignment, Metz granted to Sycamore a perpetual, royalty free, exclusive license to use the GRANDMA SYCAMORE'S Marks within specified areas of Arizona, Nevada, and Southern California. In the Trademark License Agreement, Sycamore expressly agreed not "to use any marks confusingly similar to the [GRANDMA SYCAMORE'S Marks] without the prior express written approval of Metz." Sara Lee acquired all right, title, and interest in and to the GRANDMA SYCAMORE'S Marks when Metz merged into Sara Lee.

Sara Lee makes an assortment of GRANDMA SYCAMORE'S bread, including White, 100% Honey Whole Wheat, Honey Grain, and Sunflower homemade bread loaves. GRANDMA SYCAMORE'S is the leading brand of bread sold in Utah. On December 23, 2008, legal counsel for Sara Lee sent a letter to Sycamore demanding that he refrain from using SYCAMORE or any other trademark containing the component SYCAMORE in connection with bread and bakery products, except as expressly permitted by license from Sara Lee. Sycamore did not respond to this demand letter or Sara Lee's follow-up demand letters dated January 26, 2009, February 26, 2009, and June 8, 2009.

In May 2009, Defendants began use of the trademark SYCAMORE FAMILY BAKERY in connection with the marketing and sale of bread in Utah in direct competition with Sara Lee.

Defendants registered the trademark SYCAMORE FAMILY BAKERY & Design with the State of Utah and registered the domain names sycamorefamilybakery.com and grandmasycamoreshomemaidbread.com.

Defendants sell an assortment of bread under the SYCAMORE FAMILY BAKERY brand, including white, wheat, and sourdough homemade bread loaves.  Defendants' homemade bread is the same size, shape, color, and weight and has the same irregular break-apart appearance on one side of the loaf as GRANDMA SYCAMORE'S bread.  On each package of SYCAMORE FAMILY BAKERY bread, the words "SYCAMORE FAMILY BAKERY, INC." are repeated twenty-four times in black capital letters above a teddy bear, and the teddy bear is always holding hearts.  There are hears also incorporated into the logo on the packaging of GRANDMA SYCAMORE'S HOME MAID BREAD.

Defendants market their SYCAMORE FAMILY BAKERY bread as the "original granny bread," and tell customers that their products are the "original version" of Grandma Sycamore's.  There is also evidence that Defendants are stating that Sara Lee has changed the ingredients in GRANDMA SYCAMORE'S HOME MAID BREAD after acquiring the brand.  Sycamore also made efforts to sell a product called "Aaron Bakery Original Granny Bread."

From mid-May to mid-June, Defendants sold bread in SYCAMORE FAMILY BAKERY bags, including white and wheat homemade bread loaves, to Ream's, Harmon's, Macey's, and NPS.  Sara Lee also sells bread and bakery products, including GRANDMA SYCAMORE'S bread, to these four grocery stores as well as to other grocery stores throughout Utah.  Defendants presented evidence that they have recently changed their product packaging in grocery stores to the brand "Nana's Love."  However, it appears that bakery products are still being promoted by Defendants under the SYCAMORE FAMILY BAKERY brand to retail locations such as grocery

3

stores. And some bread in SYCAMORE FAMILY BAKERY packaging is still available for sale in some grocery stores. This may be the result of non-retail sales. Also, bread packaged under the SYCAMORE FAMILY BAKERY brand continues to be offered to the public at the Sycamore Family Bakery outlet store located in Salt Lake City. Sara Lee also operates outlet stores throughout Utah in which bread and bakery products, including GRANDMA SYCAMORE'S bread, are sold to the public.

In addition to retail customers, Defendants and Sara Lee sell to the same types of non-retail customers, namely restaurants, food distributors, and similar customers throughout Utah. Defendants and Sara Lee have several non-retail customers in common, including large institutional accounts. Defendants deliver all goods (except oversized loaves) to non-retail customers in SYCAMORE FAMILY BAKERY packaging. Nana's Love packaging is not used by Defendants for any non-retail customers.

## II.   CONCLUSIONS OF LAW

Preliminary injunctive relief is appropriate if the moving party establishes: "(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *Roda Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009). Where, as here, an injunction requires the nonmoving party to take affirmative action (a "mandatory injunction"), the movant must make a "heightened showing" of the four factors. *See id.* at 1209. For the reasons set forth below, the court concludes that Sara Lee has met this burden and established grounds for issuance of preliminary injunctive relief.

### A.   Likelihood of Success on the Merits

To demonstrate a likelihood of success on the merits of its claim for trademark

infringement under the Lanham Act, Sara Lee must show:  (1) its ownership of a valid trademark, and (2) a likelihood of confusion between its GRANDMA SYCAMORE'S Marks and Defendants' use of SYCAMORE in promoting and selling bakery products.  *See Low Book Sales & Leasing, Inc. v. Below Book Sales, LLC*, No. 2:99 CV 0293K, 1999 WL 674501, at *4-5 (D. Utah May 19, 1999) (unpublished).  It is undisputed that the GRANDMA SYCAMORE'S Marks are valid and owned by Sara Lee.  The court, therefore, will turn to the second element.

The Tenth Circuit utilizes the following six-factor test for determining whether a likelihood of confusion exists:  "(1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting its mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks."  *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002).

*(1)  Degree of Similarity*

"The degree of similarity between marks rests on sight, sound, and meaning."  *Id.* "Similarities are to be weighed more heavily than differences, especially when the trademarks are used on virtually identical products packaged in the same manner."  *Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 925 (10th Cir. 1986).  Although the similarity of the marks is measured by the marks in their entireties, it is proper to give greater force and effect to the dominant portions of the parties' marks.  *See, e.g., In re Chatam Int'l Inc.*, 380 F.2d 1340, 1343 (Fed. Cir. 2004).

As confirmed by survey evidence submitted by Sara Lee, the dominant feature of the parties' marks is "SYCAMORE."  SYCAMORE is a highly distinctive and arbitrary term as applied to bread, and the surname Sycamore is also highly unusual and distinctive.  The terms

"HOME MAID BREAD" in Plaintiff's mark and "BAKERY" in Defendants' mark have nominal commercial significance, are commonly used in many other trademarks, and do not serve to distinguish the goods. The term "GRANDMA" in Plaintiff's mark and the term "FAMILY" in Defendants' mark merely reinforce the notion of family. Thus, when viewed in their entireties with the non-dominant features appropriately discounted, the parties' marks are nearly identical in appearance and sound the same when spoken. In addition, the parties' marks both convey the commercial impression that the "Sycamore family" is the source of both parties' products.

Defendants rely on *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084 (10th Cir. 1999) to support its arguments that the marks are dissimilar. But *King of the Mountain* involved a claim of infringement of a design trademark, not the alleged infringement of a word trademark. *Id.* at 1090-91. Word trademarks have a broader degree of protection. In addition, the factual circumstances in *King of the Mountain* involved companies with different goods and services–camouflage outdoor apparel and the promotion of downhill ski races. *Id.* at 1086-88. Moreover, in that case, there was no evidence that the defendant was even aware of the plaintiff's existence when the challenged design was developed. *Id.* Accordingly, the court concludes that *King of the Mountain* is not instructive in this case.

     *(2) Intent of Defendants in Adopting Mark*

Under this factor, the court must consider whether Defendants "had the intent to derive benefit from the reputation or goodwill" of GRANDMA SYCAMORE'S. *Delta Western Group, L.L.C. v. Ruth U Fertel, Inc.*, 2000 WL 33710852, at *5 (D. Utah Sept. 28, 2000). "Direct evidence of intentional copying is not necessary to prove intent. Rather, the use of a contested mark with knowledge of the protected mark at issue can support a finding of intentional copying." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275,

286 (6th Cir. 1997). "The inference of intent is especially strong when the parties have had a prior relationship." *Beer Nuts*, 805 F.2d at 927.

Here, Defendants had full knowledge of Sara Lee's rights to and use of the GRANDMA SYCAMORE'S Marks. The parties' prior relationship and Defendants' intimate knowledge of the GRANDMA SYCAMORE'S Marks alone support a finding that Defendants deliberately adopted a mark similar to the GRANDMA SYCAMORE'S Marks to derive benefit from the reputation and goodwill of GRANDMA SYCAMORE'S. *See Osgood Heating & Air Conditioning, Inc. v. Osgood*, 2004 WL 3436800 (N.D. Tex. Dec. 21, 2004). Additional evidence of intent submitted by Sara Lee further reinforces this conclusion, including Defendants' disregard of and joking about cease and desist letters, ignoring a co-worker's warnings, and theft of Sara Lee's bread racks.

Defendants assert that Sycamore adopted the name Sycamore Family Bakery because it is his family name and he did not give up the right to use his surname in business. But the fair use defense is "not available if the alleged descriptive use is in fact a trademark use." *Beer Nuts, Inc. v. Clover Club Foods Co.,* 711 F.2d 934, 937 (10th Cir. 1983). A "trademark use" is use of a term "to identify the source of [a producer's] goods to the public and to distinguish those goods from others." *Id.* at 938. Defendants are using the term Sycamore as a trademark. Moreover, the purchaser of a company's goodwill, such as Sara Lee in this case, is "entitled to protection against interference with that goodwill, including the use of any name, mark or advertisement indicating that [Defendants] are the successors to the original company or that their products are those of the original company." *Peter Luger Inc. v. Silver Star Meats, Inc.*, 2002 WL 1870066, at *17 (W.D. Pa. May 17, 2002).

*(3) Evidence of Actual Confusion*

Although the Lanham Act only requires likelihood of confusion, actual confusion is recognized as the best evidence of likelihood of confusion. *See Standard Oil Co. v. Standard Oil Co.*, 252 F.2d 65, 74 (10th Cir. 1958).  Despite the inherent difficulty of finding instances of actual confusion for a low cost product like bread that has only been sold in the market for a few months, Sara Lee has proven several instances of actual confusion.  These incidents include both confusion by those involved regularly in the sale and distribution of food products like bread, as well as confusion among ordinary consumers.  For example, a Sysco representative demanded the purchase of Defendant's product from Sara Lee because of the Sycamore name on Defendants' package.  This evidence further supports a finding of infringement.

In addition to the evidence of actual confusion, Sara Lee has presented evidence of a likelihood of confusion via a product "line-up" survey of 660 Utah residents conducted by marketing expert Robert L. Klein.  Adjusting for the control group, the survey found that between 33.8 and 44.6 percent of Utah bread purchasers are likely to be confused and falsely believe that Defendants' SYCAMORE FAMILY BAKERY products are either made by Sara Lee or connected or affiliated with Sara Lee.  It is generally accepted that much lower levels of confusion than this are indicative of a likelihood of confusion.  *See, e.g., Sally Beauty*, 304 F.3d at 979-80 (survey evidence indicating that 26% of survey participants were confused by competing trade dresses was "strong evidence of actual confusion"); *Re/Max Int'l Inc. v. Help-U-Sell Inc.*, 20 U.S.P.Q. 2d 1945, 1946-47 (C.D. Cal. 1991) (trade dress infringement survey showing 28% affiliation response "constitutes strong evidence" of likelihood of confusion).  Defendants did not offer any competing survey evidence.  These facts further support Sara Lee's likelihood of success on the merits and support the entry of an injunction

against Defendants.

To counteract the likelihood of confusion, Defendants propose affixing a disclaimer sticker to their packaging that would state that the product is not associated with GRANDMA SYCAMORE'S. Disclaimers, however, are generally disfavored and the reference to GRANDMA SYCAMORE'S could actually cause additional confusion to a casual observer.

The Tenth Circuit has adopted a very demanding standard when a defendant seeks to avoid an injunction for trademark infringement by using a product disclaimer that disavows any association with the plaintiff's products. Under this standard: "The proponent of a disclaimer bears a 'heavy burden . . . to come forward with evidence sufficient to demonstrate that any proposed [disclaimer] materials would significantly reduce the likelihood of consumer confusion.'" *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1243 (10th Cir. 2006) (quoting *Home Box Office*, 832 F.2d at 1315). In *Australian Gold*, the Tenth Circuit rejected the defendant's request for a disclaimer, noting that the defendant offered no evidence to meet its burden of proving that a disclaimer would avoid confusion, and that mere "conclusory allegations" were insufficient. *See id*.

Defendants argues that while the Tenth Circuit indicated in *Australian Gold* its approval of the Second Circuit's distrust of disclaimers where there is a substantial likelihood of confusion, that case also acknowledges that "each case must be judged by considering the circumstances of the relevant business and its consumers." *Id.* In the present case, however, the court finds a substantial likelihood of confusion. And the circumstances of the relevant business and consumers does not help Defendants' position. There is evidence that both retail and non-retail customers merely glance at the packaging and identify anything stating Sycamore with Sara Lee's product.

Defendants have submitted no evidence nor offered any argument to meet their heavy

burden of proving how or why a disclaimer sticker would avoid the consumer confusion proven by Plaintiff. This fact alone requires the Court to deny this form of relief. *See Charles of Ritz Group, Ltd. v. Quality King Distribs., Inc.*, 832 F.2d 1317, 1324 (2d Cir. 1987) (refusing to require disclaimer stickers in lieu of an injunction against infringement where the defendant offered no evidence to show that a disclaimer would be effective in the case); *Beacon Mut. Ins. Co. v. One Beacon Ins. Corp.*, 376 F. Supp. 2d 251, 266 (D.R.I. 2005) (same).

*(4) Similarity of Products and Manner of Marketing*

The parties' products in this case are identical-various types of homemade breads and other bakery products. Also, the products are marketed in the same manner to the same types of customers-grocery stores, restaurants, food service companies, and other retail and non-retail establishments selling food. The product sale and distribution is similar, including sales staffs, grocery store shelves, and delivery by food distributors.

Limiting sales to "non-retail" customers does not avoid infringement. Sara Lee sells under the GRANDMA SYCAMORE'S brand in non-retail settings as well and the parties are direct competitors in non-retail accounts. In fact, there were incidents of actual confusion in customers characterized as non-retail. There is also an overlap between retail and non-retail that cannot be overcome, such as selling to a grocery store for product on the store shelves and products used in the store's deli.

Defendants' marketing of its bread as the "original granny bread" further increases the likelihood of confusion between the SYCAMORE FAMILY BAKERY Mark and the GRANDMA SYCAMORE'S Marks. By claiming to have the original granny bread, Defendants not only increase the likelihood of a false association with GRANDMA SYCAMORE's, but they area also seeking to pass off their product as GRANDMA SYCAMORE'S. Under similar

circumstances, courts have found such wrongful passing off as constituting unfair competition in violation of the Lanham Act. *See, e.g., Enders Razor Co. v. Christy Co.*, 85 F.2d 195, 198 (6th Cir. 1936)

*(5) Degree of Care*

Where, as here, the buyer class is mixed (i.e., consists of both professional buyers and retail consumers), "the standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer in the class" (i.e., the retail consumer). *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 293 (3d Cir. 1991). Bread costs at most a few dollars per loaf, and is a low cost item for which retail consumers are likely to exercise limited care and attention. *See Kemp v. Bumble Bee Seafoods, Inc.*, 398 F.3d 1049, 1055 (8th Cir. 2005) (finding that "likely consumers are not expected to exercise great scrutiny in the purchase of low-price, supermarket items"). And, even if the products are bought in bulk by non-retail customers, such as restaurants, it is a product that has to be repeatedly purchased fresh.

*(6) Strength of the Marks*

Defendants do not contest that Sara Lee's GRANDMA SYCAMORE'S Marks are strong. With respect to conceptual strength, GRANDMA SYCAMORE'S is inherently distinctive and arbitrary as applied to bread. Moreover, Sara Lee's registered trademarks are incontestable under 15 U.S.C. § 1065. With respect to commercial strength, the evidence demonstrates that the GRANDMA SYCAMORE'S Marks have overwhelming consumer recognition in the Utah market.

The court, therefore, concludes that Sara Lee has met its heightened burden for demonstrating a likelihood of success on the merits with respect to its trademark infringement claim and its unfair competition claim under the Lanham Act. Accordingly, this factor weighs in

favor of granting a preliminary injunction.

### B.     Irreparable Harm

Traditionally, irreparable harm has been presumed if a likelihood of success on the merits in a trademark infringement action is proven. *See Marker Int'l v. deBruler*, 635 F. Supp. 986, 998 (D. Utah 1986), *aff'd*, 844 F.2d 763 (10th Cir. 1988). This presumption has been called into question by the Supreme Court's decision in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393-94 (2006). The court need not consider how eBay might apply in this context as Sara Lee has presented sufficient proof of the irreparable harm that will result if Defendants were permitted to continue infringing the GRANDMA SYCAMORE'S Marks during the pendency of this litigation.

Sara Lee has spent millions of dollars and many years of effort to establish and maintain high standards for the manufacture and sale of GRANDMA SYCAMORE'S bread as the leading brand of bread in Utah. It appears to the court that Defendants do not and cannot equal this effort. Thus, without an injunction, the strong reputation of this very popular product could be forever tarnished. Moreover, the threatened injury to Sara Lee's control over the quality of its GRANDMA SYCAMORE'S bread is irreparable. Further, the extent of the loss of consumer goodwill and reputation that Sara Lee would suffer from Defendants' use of the SYCAMORE FAMILY BAKERY mark, and the possible diversion of customers, may be largely unquantifiable. Money damages will not adequately address these harms. Sara Lee's showing of irreparable harm is also strengthened by the evidence suggesting that Sycamore Family Bakery could not adequately answer in damages.

Accordingly, the court concludes that Sara Lee has met the high burden required to demonstrate irreparable harm. The court, therefore, concludes that this factor supports the

issuance of a preliminary injunction.

    **C.    Balance of Harm**

SYCAMORE FAMILY BAKERY bread has been sold for only a few months, while Sara Lee and its predecessors-in-interest have been selling GRANDMA SYCAMORE'S bread for seventeen years. Also, Defendants have little investment in their brand compared to Sara Lee's substantial investment in GRANDMA SYCAMORE'S. Thus, it would not be a hardship for Defendants to market and sell bakery products under a non-infringing mark. To the contrary, Defendants have already made the transition during the pendency of this litigation to the mark NANA'S LOVE for most bakery products sold in grocery stores, and there is no reason why they cannot make that transition for non-retail accounts as well.

    **D.    Public Interest**

In Lanham Act cases, the public interest is served by eliminating the likelihood that consumers will be confused by the infringer's conduct. *See Delta Western Group, L.L.C. v. Ruth U. Fertel, Inc.*, No. 2:00-cv-0045C, 2000 WL 33710852, at *8 (D. Utah Sept. 28, 2000) (unpublished). Here, an injunction will eliminate any confusion between the GRANDMA SYCAMORE'S Marks and the SYCAMORE FAMILY BAKERY mark. The proposed injunction will, therefore, serve the public interest.

For the foregoing reasons, the court will enter the preliminary injunction requested by Sara Lee. However, pursuant to Fed. R. Civ. P. 65(c), Sara Lee is required to post a bond in the amount of Ten Thousand Dollars ($10,000). The court has considered Defendants' request for a phase-out period and finds that there is no evidence to justify a phase-out period of longer than fifteen (15) business days.

**III.    ORDER**

Therefore, IT IS HEREBY ORDERED that Sara Lee's Motion for Preliminary Injunction is GRANTED, and the court hereby issues the following preliminary injunction:

(1)    Defendants, their officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with them who receive actual notice of this Preliminary Injunction by personal service or otherwise, are hereby prohibited and enjoined during the pendency of this litigation from:

(a)    Using outside of the Disputed Territory (as defined below) SYCAMORE FAMILY BAKERY or any other designation, trademark, service mark, or trade dress containing the component SYCAMORE:  (i) on product packaging; (ii) on written materials given to or seen by customers, such as promotional materials, business cards, letterhead, invoices or other ordering or shipping records; or (iii) in any other written or verbal manner that serves to identify the source of Defendants' products; and

(b)    In any way suggesting to actual or prospective customers outside of the Disputed Territory (as defined below) that Defendants' products derive from the same source as, or are otherwise related to, GRANDMA SYCAMORE'S HOME MAID BREAD.  In particular, but without limitation, Defendants shall not promote any of their products as the "original granny bread," the "original Grandma Sycamore's," or any substantially equivalent phrase which suggests that Defendants' products originate from the same or original source of GRANDMA SYCAMORE'S HOME MAID BREAD.

"Disputed Territory" means Arizona, Nevada, and Southern California, with the exclusion of the following cities in Nevada:  Overton, Mesquite, Logandale, Glendale, and Bunkerville; and the following cities in Arizona:  Littlefield, Colorado City, Cane Beds,

Mocassin, and Fredonia.

(2) Sara Lee shall post a security bond in the amount of Ten Thousand Dollars ($10,000.00) before this Order shall take effect.

Defendants shall have fifteen (15) business days from the effective date of this Order to fully comply with the terms of this Order.

DATED this 27th day of October, 2009.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge