# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| SARA LEE CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>SYCAMORE FAMILY BAKERY, INC., and LELAND SYCAMORE,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:09CV523DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on the motions in limine filed by both parties. On August 2, 2011, the court held a hearing on all motions in limine, heard argument from counsel, and took the motions under advisement. At the hearing, Plaintiff Sara Lee Corporation was represented by Charles A. Burke, Margaret Niver McGann, and Juliette P. White, and Defendants Sycamore Family Bakery and Leland Sycamore were represented by Heather L. McClosky. After considering the memoranda and other materials submitted by the parties, the arguments made at the hearing, and the law and facts related to the motions, the court enters the following Memorandum Decision and Order.

Defendants have five motions in limine: (1) to preclude any reference to or evidence of liability insurance; (2) to preclude any reference to the language of this court's orders granting Plaintiff's motion for preliminary injunction and the parties' cross-motions for summary judgment; (3) to preclude any reference to Plaintiff's motion for contempt, the conduct that led to it, or the order thereon; (4) to preclude any reference to amount paid by Metz Baking Company to

acquire Grandma Sycamore Trademark Rights; and (5) to preclude any reference to unrelated "bad acts" by Defendants. Sara Lee has a motion in limine to exclude opinions and testimony of Defendant's expert witness Jason A. Engel. The court will address each motion in turn.

**1.  Defendants' Motion to Preclude Any Reference to or Evidence of Liability Insurance**:

At the hearing on the motions in limine, Sara Lee agreed not to make any reference to or to introduce any evidence of Defendants' liability insurance. Based on that agreement, the motion is granted.

**2.  Defendants' Motion to Preclude Any Reference to the Language of This Court's Orders Granting Plaintiff's Motion for Preliminary Injunction and the Parties' Cross Motions for Summary Judgment:**

During briefing on this motion, the parties reached agreement on the exclusion of any reference to the language of this court's order granting Sara Lee's motion for preliminary injunction. However, the fact that the preliminary injunction was entered and its contents are not excluded. The parties also agree that the fact that the permanent injunction was entered and its contents can be entered into evidence. In addition, the parties do not dispute that relevant undisputed background facts contained in the court's order can be provided to the jury as stipulated facts. Therefore, the only dispute remaining with respect to this motion in limine pertains to the preclusion of other language in this court's memorandum decision and order granting the permanent injunction and ruling on the parties' cross motions for summary judgment ("Court's Order").

The Court's Order contains lengthy recitations of the parties' arguments, the evidence considered, the court's findings concerning the issues presented, and the court's ultimate

conclusions on those issues. The parties agree that to the extent that Sara Lee seeks to refer to the Court's Order to prove the existence of certain facts, the jury can be instructed that it must accept certain facts as being proved as a matter of law. *See Beech Acceptance Corp. v. Connell*, 1990 WL 171000 at *2 (D. Kan. Oct. 31, 1990). Both parties also appear to understand that the jury must be given some background information explaining the posture of the case so it can understand its role. The jury comes to this case mid-stream after the court has concluded that Defendants are liable as a matter of law for trademark infringement, unfair competition, and breach of contract. The jury will be asked whether the infringement was willful and what damages flow from Defendants' conduct. In order to make sense of their work, the jury must be informed that the court has determined liability and it is not being asked to nor should it consider whether infringement occurred. The parties, however, dispute how much information the jury should be given.

The court agrees that the information provided to the jury regarding this court's findings and conclusions should be limited so that the jury will not be influenced in any decisions it must reach by the court's prior rulings. The court, however, cannot fully insulate the jury from the knowledge that adverse rulings have been made against Defendants. The jury must also be given a basic understanding of the basis for the court's rulings.

Initially, Defendants requested that the jury only be given four basic facts. In its opposition to Defendants' motion in limine, Sara Lee proposed a list of twenty-one numbered facts to provide to the jury, and Defendants have since agreed to all of them but eight. Defendants object to Facts Number 1 through 6 as irrelevant and object to Facts Number 7 and 8 as usurping the jury's role of determining whether infringement was willful.

Although the parties have agreed to all but eight of Sara Lee's presented facts, the court believes that they should be re-organized and re-worded in order to be in a form that can be presented to the jury. The jury should first be informed that it has already been determined that Defendants' conduct constituted trademark infringement and unfair competition under the Lanham Act as well as common law trademark infringement and unfair competition. These "facts" are currently listed as 9 through 11. The jury should then be informed that the relevant facts or bases for that ruling is the following. Leland Sycamore created the Grandma Sycamore marks and sold those marks to Sara Lee's predecessor. After selling the Grandma Sycamore marks, Leland Sycamore started selling the same bread and bread products under the name of Sycamore Family Bakery to the same retail and nonretail customers. It has already been found that the term Sycamore is very distinctive and unique in the context of bread, and because Sycamore is the dominant feature of both marks, the similarity of the marks caused confusion with retail customers and with professionals in the nonretail bread market. The court, therefore, requests that Sara Lee rework the first eleven numbered paragraphs in its list of facts to reflect these changes and resubmit the list to the court within one week of the date of this Order.

Accordingly, Defendants' motion is granted in part and denied in part as explained above.

**3.     Defendants' Motion to Preclude Any Reference to Plaintiff's Motion for Contempt, the Conduct That Led to It, or the Order Thereon:**

Defendants seek to preclude any reference to Sara Lee's motion for contempt sanctions, Defendants' contemptuous conduct, and this Court's Order on Sara Lee's motion for contempt sanctions on the grounds that such evidence is irrelevant to whether Defendants' trademark infringement was willful and would only serve to prejudice Defendants. Defendants further

argue that Sara Lee has already been compensated for the damages caused by the contempt and the introduction of evidence relating to the contemptuous conduct could influence the jury's award of damages at trial, which need to relate to Defendants' conduct prior to the contemptuous conduct.

Defendants' contemptuous conduct is relevant, probative evidence on the issue of willfulness. The conduct relates to Defendants' possibly willful intent to infringe Sara Lee's trademarks and disregard for Sara Lee's rights. The conduct occurred only shortly after this court entered a permanent injunction prohibiting such conduct. The court agrees with Sara Lee that Defendants' willingness to disregard the court's permanent injunction order and sell over 14,000 products in bags they knew infringed Sara Lee's trademarks is compelling circumstantial evidence of a continuing state of mind of deliberate disregard for and intentional infringement of the Grandma Sycamore marks. The issue of willfulness requires the jury to understand the inner workings of Defendants' mind and can often only be demonstrated through circumstantial evidence. Defendants will have an opportunity to testify as to their intent. Sara Lee must equally have the opportunity to put on evidence of Defendants' actions as such actions may relate to intent. The jury can then decide which evidence is most persuasive.

In *Estate of Bishop v. Equinox Int'l Corp.*, 256 F.3d 1050, 1060 (10th Cir. 2001), the Tenth Circuit held that the defendant's "failure to honor the cease and desist agreement . . . clearly support[ed] a finding of willful infringement." The fact that the contemptuous conduct in this case occurred after entry of the preliminary and permanent injunction orders does not change its relevance. The fact that Defendants continued to infringe Sara Lee's trademarks after entry of injunctive relief is relevant and probative evidence of continued willfulness. At least, a jury

should be entitled to consider whether it is.

The fact that Sara Lee has already been compensated for the damages it suffered as a result of Defendants' conduct does not change the fact that the conduct remains highly probative of Defendants' state of mind and overall attitudes. Both parties agree that if the evidence is allowed, the jury will be given a limiting instruction stating that the evidence of Defendants' contemptuous conduct is to be considered only for the purpose of determining willfulness and not in assessing any damages.

Moreover, Defendants fail to explain why this evidence is unfairly prejudicial. "Evidence is not unfairly prejudicial simply because it is damaging to an opponent's case." *United States v. Martinez*, 938 F.2d 1078, 1082 (10th Cir. 1991). Given the evidence's probative value in demonstrating intent and motive, which is relevant to willfulness, Defendants must show that the prejudice is so unfair that it outweighs its probative value. Sara Lee has aptly demonstrated the probative value of the evidence. Evidence of disobeying court orders undoubtedly looks bad to a jury. But, the court notes that Defendants brought about that prejudice themselves by disobeying court orders. This court has already determined that the contemptuous conduct was not the result of mistake.

Defendants also make reference to potential prejudice because of the per loaf calculation for damages that they agreed to during the contempt proceedings. Defendants stipulation to that per loaf value can easily be excluded. Because the stipulation was for purposes of the contempt motion, the court will not allow it in at trial.

Because this evidence is relevant to showing Defendants' ability and willingness to disregard Sara Lee's rights and to intentionally benefit from the goodwill and reputation

associated with the Grandma Sycamore marks, such circumstantial evidence of Defendants' state of mind and attitude outweighs any potential prejudice and cannot be withheld from the jury as they decide whether Defendants' infringement was willful. The court concludes that the evidence should be presented to the jury. Accordingly, Defendants' motion in limine is denied.

4. **Defendants' Motion in Limine to Preclude Any Reference to Amount Paid by Metz Baking Company to Acquire Grandma Sycamore Trademark Rights:**

In 1998, Metz Bakery, Sara Lee's predecessor, paid Leland Sycamore approximately $10 million for the rights to Grandma Sycamore's assets, marks, and all its goodwill and business and trade secrets. Defendants seek to exclude the amount paid to Leland Sycamore in that transaction. Defendants contend that evidence of, or reference to, the amount Metz paid Sycamore should not be admitted because such evidence is wholly irrelevant to the issues to be tried and would only serve to unduly prejudice Defendants. Defendants claim that such evidence will likely be misused by the jury in affixing the amount of damages to be awarded to Sara Lee.

The problem with Defendants' motion is that the 1998 transaction embodied in the Asset Purchase Agreement ('APA") underlies each of the causes of action in this case and leaving out the amount of money at issue in the transaction would leave the jury without an important piece of information. The APA cannot be fully understood without understanding all of the details. The rights and values established by the APA are important for a factfinder assessing Defendants' conduct and appropriate damages. The amount of money Leland Sycamore was paid for his Grandma Sycamore business, a key component of which was the trademarks, goes to his knowledge that all rights were transferred and his knowledge with respect to the reputation of and good will associated with the brand. Sara Lee can properly use the amount Leland

Sycamore was paid to demonstrate that Defendants had an incentive to deliberately cause confusion and to intentionally benefit and profit from the goodwill and reputation of the marks. Leland Sycamore can put on counter evidence, and the jury can weigh each side's evidence.

Furthermore, in the 1998 Transaction, Leland Sycamore was not only paid $10 million but he was given royalty-free licensing rights to the marks in three states pursuant to the Trademark License Agreement ("TLA") that was executed as part of the entire corporate transaction. To fully understand Sara Lee's breach of contract claims related to TLA, and to properly assess any damages that may be relevant, the jury must have a full understanding of the entire transaction. The original price of marks and business under the APA is relevant in weighing and considering damages under the breach of contract claim.

The court agrees that the amount of money paid to Leland Sycamore was for the entire business, not just the trademarks. Sara Lee cannot state that Leland Sycamore was given $10 million for the Grandma Sycamore marks. The parties can put on evidence as to the value of the component parts of what was transferred. Although Defendants claim this type of testimony could add an additional day to the trial, the court believes it could be addressed in twenty to thirty minutes.

Requiring the jury to assess and weigh Defendants' conduct absent any reference or understanding of the original purchase price would give the jury an incomplete picture of the parties relationship and rights. There would be a greater risk of jury confusion by excluding the evidence. Accordingly, Defendants' motion in limine is denied but with a cautionary instruction to Sara Lee that it cannot make a blanket statement that Leland Sycamore received $10 million for the trademarks alone.

**5.  Defendants' Motion to Preclude Any Reference to Defendants' Unrelated Bad Acts:**

Defendants seek to preclude Sara Lee from offering evidence regarding Leland Sycamore's alleged instruction to employees to steal Sara Lee bread racks.  First, Defendants argue that the evidence comes from a sole, disgruntled ex-employee, Chad Lusk, who was himself fired for stealing products.  Defendants claim that his testimony should be considered unreliable and should not be permitted as the sole evidence of Defendant's purported conduct.

However, evidence that Defendants instructed their employees to steal Sara Lee bread racks is based on Lusk's testimony and the affidavit of Alan Haertel, the Utah Zone Vice President for Sara Lee.  Haertel testified that when he visited Defendant's outlet store he saw several Sara Lee bread racks.  He stated that Sara Lee racks are distinctive, Sara Lee does not sell its racks, and the only way for them to be in Defendants' facility would be if they had been taken.  The evidence, therefore, comes from two sources.  And, most significantly, Defendants arguments attack the credibility and not the admissibility of the evidence.

Defendants further argue that evidence of stolen bread racks is not relevant because willfulness is only the intent to appropriate the goodwill of another's mark.  Defendants assert that the intent to interfere generally with another's business is not willful infringement.  However, Defendants' definition appears to be overly restrictive.  To demonstrate willfulness under the Tenth Circuit standard, Sara Lee must prove that: (1) Defendants deliberately disregarded Sara Lee's rights, or (2) Defendants deliberately caused confusion and mistake in order to deceive purchasers, or (3) Defendants intentionally benefitted from the goodwill or reputation of the trademark holder.  *Western Diversified Servs. v. Hyundai Motor Am., Inc.,* 427 F.3d 1269, 1272-74 (10th Cir. 2005).

Evidence of Defendants' purported willingness to steal Sara Lee's physical property at the same time that it is infringing Sara Lee's intellectual property rights is relevant to an assessment of willful infringement. There is evidence that the Sara Lee bread racks are distinctive in appearance and Sara Lee's vice president recognized them as Sara Lee bread racks when he was at Defendants' facility. A jury could find the bread racks to be a deliberate attempt to create confusion about Defendants' relationship with Sara Lee. The court refuses to employ Defendants' restrictive definition of willfulness for purposes of deciding what evidence is relevant to a determination of willfulness at trial. Moreover, the court agrees with Sara Lee's analysis under Federal Rule of Evidence 404(b) and concludes that the evidence is proper to admit.

**6.    Sara Lee's Motion to Exclude Opinions and Testimony of Jason A. Engel:**

Sara Lee seeks to exclude the opinions and testimony of Defendants' accounting expert, Jason A. Engel, based on several grounds. Engel's expert report indicates that Engel plans to testify that Sara Lee is not entitled to lost profit damages based upon sales made under Sycamore's unlawful sublicense to Holsum Bakery in Arizona. The basis for Engel's opinion that Sara Lee could not suffer losses on Holsum's sales is the fact that Sycamore has an exclusive license to sell product in Arizona and Nevada and Sara Lee was not able to sell to those states. Engel plans to testify that instead of lost profits, Sara Lee should be awarded a small royalty on sales made under the unauthorized sublicense agreement.

Engel cannot give opinions or testimony that contradicts this court's ruling that Sara Lee is entitled to seek from Defendants as a measure of damages the profits on Holsum's sales as a result of Sycamore's unlawful sublicense agreement to Holsum. Engel's position in his report is

identical to the unsuccessful position Defendants took in their motion for summary adjudication. In Defendants' motion for summary adjudication, Defendants attempted to preclude Sara Lee from seeking as a measure of damages Holsum's profits resulting from the unauthorized sublicense. But in the Tenth Circuit, "the unavailability of actual damages as a remedy . . . does not preclude [plaintiff] from recovering an accounting of [defendant's] profits" and "[t]he infringer's use of the markholder's property to make a profit results in unjust enrichment that may properly be remedied through an award for profits, even if the defendant and plaintiff are not in direct competition." *Bishop v. Equinox Int'l Corp.*, 154 F.3d 1220, 1222-23 (10th Cir. 1998). The court's order explained that "courts have now settled on the theory that a trademark infringer is liable as a trustee for profits accruing from his illegal acts, even though the owner of the mark was not doing business in the consuming market where the infringement occurred." *Blue Bell Co. v. Frontier Refining Co.*, 213 F.2d 354, 362-63 (10th Cir. 1954). Based on these cases and Sycamore's unauthorized sublicense to Holsum, the court held that Sara Lee is entitled to seek from Defendants as a measure of damages the profits on Holsum's sales in Arizona and Nevada.

Engel cannot give an opinion as to what damages are available to Sara Lee that contradicts this court's ruling on available damages. Such an opinion is a inappropriate legal opinion which this court has already given. Engel's report states that Sara Lee did not suffer any lost sales or lost profits from Holsum's sales because, under the terms of the TLA, Sara Lee could not and did not sell the Sycamore brand in Arizona or Nevada. While he can factually testify that Sara Lee was not competing in the market, he cannot legally opine that it suffered no damages as a result. Tenth Circuit case law specifically states that the trademark holder is entitled to seek the profits from unauthorized sales even if the trademark holder does not

11

compete in that market. Engel cannot testify in a manner that is inconsistent with controlling law.

The court's prior order on the damages Sara Lee could seek did not make findings on the nature and extent of Sara Lee's injury caused by Holsum's sales and did not make findings that Sara Lee in fact suffered lost profits. The court's order merely identified the damages available to Sara Lee. Factual issues as to the extent of damages can be addressed by Engel and those issues will be determined by the jury at trial.

Furthermore, Engel's testimony that Sara Lee should receive a reasonable royalty is not supported by applicable law or the facts of this case. Engel uses a reasonable royalty as a measure of damages because he assumes that Sara Lee has suffered no damages. While a reasonable royalty is a fall back measure of damages in patent infringement cases where there are no actual damages, in trademark infringement cases, the compensation awarded must be tied to the damages suffered by the plaintiff. *Compare* 35 U.S.C. § 284 (guaranteeing patent owner reasonable royalty in absence of lost profits) *with* 35 U.S.C. § 1117(a) (entitling trademark holder to recover defendant's profits, any damages sustained by plaintiff, and costs of action).

Sara Lee argues that a reasonable royalty is not a proper measure of damages in this case because it is not a fair representation of its actual loss. In *Trovan Ltd. v. Pfizer, Inc.*, 2000 US DIST LEXIS 7522 (C.D. Cal. May 24, 2000), the court rejected a reasonable royalty measure of damages in a trademark infringement case because there was no evidence that the plaintiff would have been willing to license its trademark to the infringer. *Id.* at \*58 ("Lacking any evidence that plaintiffs in this case would have licensed the rights to the mark, the award of a reasonable royalty has no basis in reality, much less any basis in fact.").

Similarly, in this case, there is no factual basis for assuming that Sara Lee would have authorized the sublicense to Holsum Bakery. The TLA expressly precludes Sycamore from sublicensing to another bakery that competes with Sara Lee, such as Holsum. Thus, as in *Trovan*, damages based on a reasonable royalty have no basis in fact or reality. Engel's royalty opinion, therefore, is legally irrelevant to a determination of Sara Lee's damages as a result of Sycamore's unauthorized sublicense to Holsum.

Moreover, Sara Lee argues that Engel's lack of analysis in considering a reasonable royalty is apparent in the widely varying conclusions he reached with respect to a royalty rate for Utah and a royalty rate for Nevada/Arizona. The court has already ruled that a reasonable royalty rate is not an appropriate measure of damages in Nevada/Arizona. To the extent that Engel is allowed to testify as to a reasonably royalty as a measure of damages in Utah, Sara Lee can attack his methodology and failure to address most of the *Georgia Pacific* factors on cross examination.

The court further declines to grant Sara Lee's request to strike all of Engel's testimony because he gained his factual knowledge of the case from counsel. Sara Lee can cross examine him about his factual investigation, review of testimony, documents, and court orders. The court does not believe there are sufficient grounds to exclude his testimony entirely. Accordingly, Sara Lee's motion in limine is granted in part and denied in part, as detailed above.

## CONCLUSION

Based on the above reasoning, and as outlined above Defendants' motion in limine to preclude any reference to or evidence of liability insurance is GRANTED; Defendants' motion in limine to preclude any reference to the language of this court's orders granting Plaintiff's motion for preliminary injunction and the parties' cross-motions for summary judgment is GRANTED

IN PART AND DENIED IN PART; Defendants' motion in limine to preclude any reference to Plaintiff's motion for contempt, the conduct that led to it, or the order thereon is DENIED; Defendants' motion in limine to preclude any reference to amount paid by Metz Baking Company to acquire Grandma Sycamore Trademark Rights is DENIED with a cautionary instruction to Sara Lee; and Defendants' motion in limine to preclude any reference to unrelated "bad acts" by Defendants is DENIED. Sara Lee's motion in limine to exclude opinions and testimony of Defendant's expert witness Jason A. Engel is GRANTED IN PART AND DENIED IN PART.

DATED this 4th day of August, 2011.

BY THE COURT:

_____
DALE A. KIMBALL,
United States District Judge