# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| **EARTHGRAINS BAKING COMPANIES, INC.,**<br><br>                    **Plaintiff,**<br><br>**vs.**<br><br>**SYCAMORE FAMILY BAKERY INC.,** **and LELAND SYCAMORE,**<br><br>                    **Defendant.** | **MEMORANDUM DECISION AND ORDER**<br><br>**Case No.  2:09CV523DAK**<br><br>**Judge Dale A. Kimball** |

This matter is before the court on EarthGrains's Motion for Contempt Sanctions, EarthGrains's Motion for Order Restraining Sale of Sycamore Family LLC Asset, Jeri Sycamore and Sycamore Family LLC's Motion to Stay, and the correct Amended Judgment pursuant to the Tenth Circuit's decision in this matter.  On June 23, 2015, the court held a hearing on these matters.  At the hearing, Plaintiff was represented by Charles A. Burke and Nicholas Frandsen, Defendants Sycamore Family Bakery was represented by Jason M. Joyal, Defendant Leland Sycamore was represented by Sean N. Egan, and Jeri Sycamore and Sycamore Family, LLC were represented by Andrew G. Deiss and Kevin A. Catlett.  The court denied Sycamore Family LLC's Motion to Stay at the hearing and took the remaining motions under advisement.  The parties filed supplemental briefing on June 29, 2015.  After carefully considering the parties arguments and the law and facts relevant to the pending motions, the court issues the following Memorandum Decision and Order.

**<u>Motion for Contempt Sanctions</u>**

EarthGrains contends that the Sycamore Family LLC has repeatedly violated this court's

Charging Order by failing to compensate EarthGrains for a damages judgment that has been

upheld by the Tenth Circuit.  Federal district courts have the "power to punish by fine or

imprisonment, or both, at its discretion, such contempt of its authority . . . as . . . [d]isobedience

or resistance to its lawful writ, process, order, rule, decree, or command."  15 U.S.C. § 401.  It is

well-settled law that a "district court has broad discretion in using its contempt power to require

adherence to court orders."  *Consumers Gas & Oil, Inc. v. Farmland Indus.*, 84 F.3d 367, 370

(10th Cir. 1996).  In order to hold a party in civil contempt, a court must find clear and convincing

evidence "[1] that a valid court order existed, [2] that the defendant[s] had knowledge of the

order, and [3] that the defendant[s] disobeyed the order."  *FTC v. Kuykendall*, 371 F.3d 745, 757-

58 (10th Cir. 2004).

The court order at issue in this dispute is the court's Charging Order entered March 6,

2014.  At the hearing on this motion, the Sycamore Family LLC challenged whether the

Charging Order is valid because it was entered under Utah law instead of Nevada law, which it

submits is the proper law.  The LLC is incorporated under Nevada law.  However, even if the

court considered this argument timely asserted, it fails on its merits.  The Charging Order does

not implicate the internal affairs of the Sycamore Family LLC.  It merely relates to the LLC's

obligations to a third party.

The internal affairs of an LLC are limited only to "matters peculiar to the relationships

among or between the corporation and its current officers, directors, and shareholders."  *Wasatch*

*Oil & Gas, LLC v. Reott*, 263 P.3d 391, 393 (Utah Ct. App. 1994).  Many courts have already

concluded that claims, such as EarthGrains's, asserted by third party creditors against an LLC fall outside the internal affairs doctrine. *Alphonse v. Arch Bay Holdings, LLC*, 548 Fed App'x 979, 986 (5th Cir. 2013); *Hitachi Med. Sys Am. Inc. v. Branch,* 2010 WL 816344, at *10 (N.D. Ohio Mar. 4, 2010).  Moreover, under a choice of law analysis, Utah law would govern the Charging Order because all of the LLC's activities, dealings, and properties are located in Utah, and Leland Sycamore is a resident of Utah.  Therefore, the court concludes that the Charging Order was properly issued under Utah law and is a valid court order for purposes of contempt proceedings.

Second, there is no dispute that the Sycamore Family LLC has notice of the court's Charging Order.  EarthGrains served a copy of the Charging Order on Jeri Sycamore, as a member-manager of the LLC, on March 13, 2014.

Therefore, the final dispute with respect to a determination of contempt relates to whether the LLC is disobeying the Charging Order.  The Charging Order provides that the LLC is to pay Leland's portion of any proceeds or distributions to EarthGrains directly until EarthGrains's Judgment is satisfied.  The LLC's Operating Agreement also requires distributions to be made to all members in proportion to their ownership interest.  EarthGrains asserts that the Sycamore Family LLC has made distributions of hundreds of thousands of dollars to Leland Sycamore's wife, Jeri Sycamore, without making the requisite payments to EarthGrains in proportion to Leland Sycamore's membership interests in the LLC.  EarthGrains claims that the LLC's failure to make proportional distributions is an effort to block EarthGrains from receiving LLC funds due under the court's Charging Order.

After this court issued summary judgment and a permanent injunction but prior to trial, the court found Defendants in contempt for continuing to sell bread under the Sycamore brand.

The court granted compensatory damages and attorney fees to EarthGrains, but Defendants have not satisfied the amounts awarded at that time.  In addition, in April 2012, a jury awarded EarthGrains damages in the amount of $2,333,129.  The court enhanced damages under 15 U.S.C. § 1116 to $4,674,950, awarded $1,091,336.40 in attorney fees and costs, and prejudgment interest at 2.18%.  The Tenth Circuit affirmed the monetary amounts of the Judgment.  Therefore the total amount Defendants owe to EarthGrains is now over $6 million.

Leland and Jeri Sycamore hold and manage the majority of their assets in and through the Sycamore Family LLC.  When the LLC was formed, Leland and Jeri Sycamore each took a 48% membership interest, with each of their four children receiving a 1% interest.  Leland Sycamore executed a document purporting to transfer 46% of his ownership interest in the LLC to Jeri Sycamore, leaving him with only a 2% interest (the "Relinquishment").  However, in a separate lawsuit between these parties, Judge Nuffer of this District Court ruled that the Relinquishment document was invalid, null and void, and of no force or effect because the managing members of the LLC did not give their prior written consent to the transfer of Leland Sycamore's membership interest as the LLC's Operating Agreement requires.  That case is now stayed pending this court's determination of the contempt issue.  However, that case has already determined that Leland Sycamore continues to hold a 48% interest in the Sycamore Family LLC.

EarthGrains asserts that the LLC regularly makes distributions to Jeri Sycamore.  Jeri Sycamore, as a member-manager of the LLC, often carries out these distributions by endorsing checks made to the LLC and depositing them in her personal accounts, treating them as a LLC distribution.  These distributions vary in amount but are often for thousands of dollars, including a recent $800,000 distribution that Jeri Sycamore used to purchase a home in Heber, Utah.  The

LLC argues that it, rather than Jeri Sycamore, bought the home in Heber as an investment.

The LLC also argues that the payments made to Jeri Sycamore are payments to compensate her for managing the LLC.  However, Jeri Sycamore and the LLC do not provide any evidence of the existence of any contracts–oral or written–to compensate Jeri Sycamore for managing LLC assets.  The deposition testimony of Jeri Sycamore indicates that the LLC has secured contracts or arrangements with outside parties for management of the LLC's assets and financial accounts.  For example, Vision Real Estate manages real estate assets, Urban Development manages real estate assets, and an outside accountant manages the LLC's accounts. Jeri Sycamore did not identify management expenses as an expense of the LLC.

However, the LLC also argues that the information EarthGrains refers to is outdated because EarthGrains learned it more than a year before the Charging Order was issued.  Before the court determines whether there is, in fact, a violation of Charging Order that would support a finding of contempt, the parties should engage in 70 days of discovery.  During that time, EarthGrains can obtain updated information from depositions and document requests. Because of the lack of current information, the court denies EarthGrains's Motion for Contempt without prejudice, to be renewed, if appropriate, at the close of the seventy days of discovery.

**EarthGrains's Motion for Order Restraining Sale of A Sycamore Family LLC Asset**

EarthGrains also seeks an order enjoining the Sycamore Family LLC from selling or attempting to sell the Sycamore family home in violation of the Charging Order against Leland Sycamore's interest in the Sycamore Family LLC. The parties dispute whether the debt belongs to the LLC or Leland Sycamore.

Leland Sycamore financed the purchase of his former business, Sycamore Family Bakery,

through a $2.1 million dollar line of credit from Wells Fargo.  On the line of credit agreement with Wells Fargo, Leland Sycamore is listed as the sole borrower.  To secure the loan, the LLC executed a deed of trust on the Sycamore family home to Wells Fargo.  The Short Form Open-End Deed of Trust lists the Sycamore Family LLC as the borrower, but it also states that the document is the security interest together with all Riders to the document.  The Third Party Rider to Deed of Trust states that it amends and supplements the Deed of Trust and it identifies Leland Sycamore as the borrower.

The principal balance on the line of credit, $1.95 million, was due in September 2013, but Wells Fargo has reportedly granted a five-year extension and has not foreclosed on the home. The Sycamores have listed the family home for sale–for $3,999,000--to pay off Leland Sycamore's debt under the Wells Fargo line of credit.  When EarthGrains learned that the house was for sale, it sent a letter to the Sycamores's counsel outlining why such a sale would violate the Charging Order and requesting that the house be taken off the market pending the outcome of the disputes between the parties.  The Sycamore's counsel disagreed and EarthGrains filed the present motion.

The Charging Order gives EarthGrains the same rights of an assignee of Leland Sycamore's interest in the LLC.  As an entity with the rights of an assignee, EarthGrains is entitled to receive any distributions to which Leland Sycamore would be entitled as a member.  If the LLC decides to make distribution to Leland Sycamore or transfer funds characterized as payment for his loans, the LLC must distribute that money directly to EarthGrains.

Utah's Limited Liability Company Act defines a "distribution" as "a direct or indirect transfer by a company of money or other property, except: (i) an interest in the company; or (ii)

incurrence of indebtedness by a company, to or for the benefit of members in the company in respect of any interest in the company." Utah Code Ann. § 48-2c-102(5)(a). Therefore, the sale of the Sycamore home and subsequent transfer of the proceeds to Wells Fargo to satisfy Leland Sycamore's debt is either an indirect distribution to Leland Sycamore or an indirect transfer of funds to him as payment for his loans. Both characterizations constitute a violation of the plain language of the Charging Order. Under the Charging Order, the LLC must "[p]ay directly to [EarthGrains] all assets, profits, proceeds, distributions, advances, draws, and any other remuneration due to [Leland] Sycamore as a result of his ownership interest in Sycamore Family LLC, including without limitation any transfers characterized or designated as payment for Sycamore's tax liabilities, salary, wages, reimbursements, or loans, until [EarthGrains's] Judgment is satisfied in full."

Although the LLC tries to argue that the LLC is the borrower and it is trying to pay off its own indebtedness, the evidence does not support that assertion. The LLC merely allowed Leland Sycamore to use its property as collateral. Leland Sycamore is the borrow and it is his debt. The documents support that conclusion as does prior testimony from the LLC stating that the debt is Leland's.

Under the Charging Order, the LLC cannot pay off Leland's debt to Wells Fargo without first paying EarthGrains the money due under this court's Judgment. The Charging Order states that "any transfers characterized or designated as payment for [Leland] Sycamore's . . . loans" be transferred directly to EarthGrains until its Judgment is satisfied in full. The court agrees with EarthGrains that one of the largest assets of the LLC cannot be sold to pay off Leland's debt to another third party. The loss of such a significant asset could cause irreparable harm to

EarthGrains in its ability to satisfy the Judgment.

The LLC argues that it is inconsistent for EarthGrains to argue that the LLC's payment of the debt would be a distribution to Leland Sycamore when it argued in the fraudulent transfer litigation that the LLC's agreement to put the house up for collateral was a loan rather than a distribution.  However, the issues in the fraudulent transfer litigation was whether the promissory note was a distribution or a loan, which is readily distinguishable.  The promissory note actually supports EarthGrains's position that the debt is Leland's not the LLC's.  Moreover, the parties have not even addressed the validity of the promissory note, which itself could be invalid, in either case.  The court also notes that it could as easily be argued that the LLC is taking inconsistent positions in the two lawsuits because it claimed the other action that the promissory note was a distribution to Leland and it now argues that paying off Leland's debt to Wells Fargo, which is what the promissory note appears to reflect, would not be a distribution.

The Sycamores further argue that Wells Fargo is now an indispensable party to this litigation under FRCP 19.  However, Wells Fargo is not seeking to foreclose on the house or threatening any action against the LLC or Leland on the line of credit.  Wells Fargo has extended the loan terms for several years.  EarthGrains's motion does not seek to establish that it has priority over Wells Fargo's security interest in the Sycamore home.  Instead, EarthGrains seeks to preserve the home for potential satisfaction of EarthGrains's Judgment. An order preventing the LLC from selling the asset does not impair or impede Wells Fargo's ability to protect its security interest.  Wells Fargo is not a indispensable party to this motion or case.

Based on the above reasoning, the court enjoins the Sycamore Family LLC from selling or attempting to sell the Sycamore family home, at 4302 N. Sheffield Dr, Provo, Utah 84604, in

violation of the Charging Order Against Defendant Leland Sycamore's Interest in Sycamore Family LLC. The home is a significant asset that must be preserved for possible satisfaction of the Judgment in this action. The court, however, will reconsider this ruling if, within twenty days of the date of this Order, Defendants and/or the LLC can provide the court with a specific and verified accounting of Defendants' available funds and assets that can be used to satisfy the Judgment separate and apart from the home.

### Post-Remand Amended Judgment

The Tenth Circuit disagreed with this court's interpretation of the forfeiture provision of the Trademark License Agreement ("TLA") relating to Leland Sycamore's trademark rights in Nevada and California and reversed this court's ruling that Sycamore forfeited his license in Arizona and Nevada. The Tenth Circuit remanded the case back to this court "for further proceedings consistent with this order and judgment."

After receiving the Mandate from the Tenth Circuit, the court issued an order requesting the parties to submit their positions on what further proceedings were necessary in the case. The parties submitted initial position statements and requested a scheduling order that allowed time for mediation to occur. The parties's mediation was unsuccessful. Defendants lodged a proposed Amended Judgment, EarthGrains submitted objections to the proposed Amended Judgment, Defendants submitted a response to EarthGrains's objections, and EarthGrains filed a reply.

Defendants's proposed Amended Judgment includes three changes to the original Judgment. The first change proposes that the court add the words "in California" to paragraph 5 of the Judgment to limit the geographic area in which Sycamore is found to have contractually

9

forfeited his rights under the TLA.  This change is in line with the Tenth Circuit's ruling and the parties agree that the first proposed change is proper.

Defendants's second change would add a new paragraph 6 to the Judgment stating that Sycamore has trademark rights in Arizona and Nevada under the TLA that remain in full force and effect.  Defendants's third proposed change requests that the court's Injunction prohibit misconduct "except as otherwise permitted in the licensed Nevada and Arizona territories."  EarthGrains opposes Defendants's second and third proposed changes.

The disputed issue is whether the Tenth Circuit's ruling on contract forfeiture in Arizona and Nevada has an impact on the scope of this court's permanent injunction.  Specifically, there is a question as to whether the injunction was proper when it enjoined Sycamore from usage of "Sycamore" and other confusingly similar conduct in Arizona and Nevada.  Sycamore contends that, based on the Tenth Circuit's ruling, this court's permanent injunction should not extend to Arizona and Nevada.  However, notwithstanding the Tenth Circuit's ruling, EarthGrains contends that Sycamore has no remaining trademark rights in Arizona and Nevada because of a variety of other factual and legal grounds that caused Sycamore to forfeit his trademark rights.

This court did not previously rule on whether Sycamore's previously adjudicated material breaches of the TLA and his intentional damaging of the Grandma Sycamore's marks in Arizona and Nevada were grounds for losing his trademark rights because it was not necessary to do so given the court's interpretation of the TLA's forfeiture provision.  However, now that the Tenth Circuit has reversed the court's ruling on the TLA's forfeiture provision, EarthGrains asks the court to consider additional grounds for Sycamore's loss of trademark rights.

The Tenth Circuit decision interpreted the TLA's forfeiture clause and determined

10

whether a forfeiture had occurred under that provision.  Whether Sycamore lost the right to use the Grandma Sycamore's marks based on misconduct or other grounds unrelated to the forfeiture provision was not considered. The Tenth Circuit never ruled that Sycamore presently possessed trademark rights under the TLA because it was not raised on appeal.

For example, on summary judgment, this court already ruled that Sycamore materially breached the TLA by sublicensing the mark to Holsum and providing the trade secret formula and process for the trademarked product without authorization.  A licensee terminates a license agreement where the licensee commits a material beach of that license.  *See Metabolite Labs, Inc. v. Lab Corp of Am. Holdings*, 370 F.3d 1354, 1370 (Fed. Cir. 2004).  A licensee's material breach "constitutes termination even where the license agreement termination clause does not expressly so provide."  *Id.*

The Tenth Circuit remanded the case for further proceedings consistent with its finding that Sycamore did not forfeit his rights in Arizona and Nevada under the TLA's forfeiture provision.  The Tenth Circuit's mandate only requires a finding that Sycamore maintained his rights under the forfeiture provision.  It does not require this court to ignore other misconduct and material breaches that might terminate Sycamore's rights under the TLA.  Maintaining an injunction within the licensed territories does not render the Tenth Circuit's decision on the forfeiture provision meaningless.  The permanent injunction in Arizona and Nevada was premised on Sycamore's forfeiture.  However, the court made findings in its previous summary judgment order that Sycamore had materially breached the TLA as well.  Therefore, the permanent injunction may now be premised on Sycamore's loss of rights under the TLA based on those material breaches.  Defendants's changes to the Judgment would expand the scope of

11

the Tenth Circuit's decision far beyond the narrow issue appealed.

Moreover, Defendants's proposed change ignores this court's proper imposition of permanent injunctive relief against Sycamore prohibiting him from engaging in any use of the Grandma Sycamore's marks.  Defendants did not challenge the injunction on appeal and the injunction was based on a variety of misconduct, including unfair competition in Arizona and Nevada.  The Injunction upholds essential aspects of the Lanham Act, one of which is preventing consumers from being misled or confused.  The Lanham Act protects consumers by ensuring that branded products come from a specific, identifiable source.  Even if Sycamore did not forfeit his trademark rights in Arizona and Nevada under the TLA's forfeiture provision, he is still properly enjoined from using those licensed rights based on his abuse of those rights and other Lanham Act violations that this court recognized in its summary judgment order.  The court cannot simply ignore Sycamore's other material breaches of the TLA.

The court's Judgment would be contradictory if it provided that Sycamore currently has trademark rights under the TLA.  Paragraph 4 of the Judgment, which was not appealed, establishes that "Sycamore breached his contractual obligations under the" TLA.  These breaches, which were not appealed, included Sycamore's unlawful attempt to sublicense his rights to one of EarthGrains's largest competitors, Sycamore's unlawful diversion of confidential trade secret information to that competitor, and his unauthorized use of a trademark that was confusingly similar to the Grandma Sycamore's marks.  Based on these material breaches to the TLA, Sycamore lost all rights he once had under the TLA.  Thus, there is no basis for an Amended Judgment stating that his trademark rights in Arizona and Nevada are in full force and effect.

Defendants argue that Sycamore's rights under the TLA can only be terminated based on forfeiture.  However, the TLA does not limit EarthGrains's remedy for breach of contract. Section 6(a) of the TLA provides EarthGrains's remedy for Sycamore's breach of contract is "to commence an action to enforce the rights available to [EarthGrains] at law or in equity." EarthGrains did just that.  This court determined that Sycamore materially breached his obligations under the TLA.  That ruling entitles EarthGrains to all "rights available . . . at law or in equity."  It is well settled that equitable relief for breach of contract may include termination of the contract as well as injunctive relief.  Accordingly, Defendants misread the TLA when they argue that EarthGrains may not terminate the License for any reason other than forfeiture. Neither the Tenth Circuit's decision nor this court's ruling on forfeiture eliminates the equitable relief EarthGrains is entitled to under the TLA.  Such relief has not been waived.  Based on the prior rulings, it may have been unnecessary, but it was not waived.

Defendants also argue that EarthGrains cannot have an injunction because it elected to recover damages for Sycamore's material breaches, sublicensing, and infringement.  But Defendants's response confuses EarthGrains's election of damage remedies at the damages trial with EarthGrains's substantive claims for relief and this court's summary judgment order. EarthGrains is not attempting to reelect remedies.  There is a fundamental difference between causes of action and remedies.  EarthGrains elected to pursue only Lanham Act damages, as opposed to damages for breach of contract, at the damages trial in this action.  EarthGrains has never made any elections concerning the various bases for Sycamore's breach of the TLA. EarthGrains moved for, and this court granted, summary judgment on EarthGrains's causes of action for breach of contract and violations of the Lanham Act.  The court also granted the

remedy of injunctive relief at the summary judgment stage.  Having failed to appeal the court's summary judgment order that Sycamore breached the TLA by sublicensing to Holsum, Sycamore waived the right to object to that ruling.  However, the improper sublicense can still justify the scope of the court's injunctive relief.

EarthGrains further argues that Sycamore's response misinterprets the Tenth Circuit decision.  The critical question before this court is whether the equitable relief granted in connection with Sycamore's breach of contract and trademark infringement remains consistent with the limited decision by the Tenth Circuit on the issue of contractual forfeiture. Sycamore's misconduct, which was never the subject of the appeal, supports the current scope of equitable relief under both the TLA and the Lanham Act.  Sycamore's argument that he could only lose rights in Arizona and Nevada by forfeiting those rights represents a fundamental misapprehension of the plain language of the TLA.  As explained above, Sycamore's position also seeks to undermine this court's prior rulings and expand the Tenth Circuit's decision beyond the narrow grounds of the appeal.

Because the Tenth Circuit did not affirm Sycamore's ongoing rights or the ongoing validity of the TLA, the full breadth of this court's permanent injunction remains warranted.  The court's prior finding of material and willful breach of contract entitled EarthGrains to broad injunctive relief and other equitable measures.  Sycamore selectively cites to this court's summary judgment order to support his argument that the Injunction was based solely on forfeiture.  The Injunction remains consistent with the court's finding of breach of contract on summary judgment.  Absent some express affirmation of Sycamore's rights under the TLA, Sycamore's proposed second and third modifications are unsupported.  There is no legal basis for

14

Sycamore's rights under the TLA in Arizona and Nevada to remain "in full force and effect." In addition, there is no need to except Nevada and Arizona in paragraph ten of the Injunction.

Accordingly, the court concludes that the only necessary amendment to the Judgment is Defendants's first proposed change, which was agreed to by the parties. The court requests that EarthGrains submit an Amended Judgment reflecting that change within ten days of the date of this Order.

CONCLUSION

Based on the above reasoning, EarthGrains's Motion for Contempt Sanctions is DENIED WITHOUT PREJUDICE to be renewed after discovery, if appropriate, EarthGrains's Motion for Order Restraining Sale of Sycamore Family LLC Asset is GRANTED, Jeri Sycamore and Sycamore Family LLC's Motion to Stay is DENIED, and the court directs EarthGrains to submit an Amended Judgment as outlined above.

DATED this 21st day of August, 2015.

BY THE COURT:

DALE A. KIMBALL
United States District Judge

15