IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| EARTHGRAINS BAKING COMPANIES, INC., <br><br>Plaintiff, <br><br>vs. <br><br>SYCAMORE FAMILY BAKERY INC., and LELAND SYCAMORE, <br><br>Defendant. | MEMORANDUM DECISION AND ORDER <br><br>Case No. 2:09CV523DAK <br><br>Judge Dale A. Kimball |

This matter is before the court on EarthGrains's Renewed Motion for Contempt Sanctions. On October 23, 2018, the court held a hearing on these matters. At the hearing, Plaintiff was represented by Charles A. Burke and Nicholas Frandsen, Defendants Leland Sycamore and Sycamore Family Bakery were represented by Sean N. Egan, and Jeri Sycamore and Sycamore Family, LLC were represented by Andrew G. Deiss. After carefully considering the parties arguments and the law and facts relevant to the pending motion, the court issues the following Memorandum Decision and Order.

## BACKGROUND

EarthGrains contends that the Sycamore family is evading payment of EarthGrains' judgment and failing to comply with this court's Charging Order. In April 2012, a jury awarded EarthGrains $2,333,129 in damages. The court enhanced the damages to $4,674,950, awarded Earthgrains $1,091,336.40 in attorney fees and costs, and prejudgment interest at 2.18%. The

total amount of the verdict is now over $6 million, and six years later, EarthGrains has not recovered anything on the Judgment.

The Sycamore Family LLC holds virtually all of the Sycamore family's assets. Leland Sycamore owns 48% of the LLC, his wife Jeri Sycamore owns 48%, and each of their four children own 1%. Leland Sycamore attempted to transfer his ownership in the LLC to his wife. But, in a separate action, Judge Nuffer ruled that it was a fraudulent transfer.

On March 6, 2014, EarthGrains sought and this court granted a Charging Order. The Charging Order provides that the LLC is to pay Leland's portion of any proceeds or distributions to EarthGrains directly until EarthGrains's Judgment is satisfied. EarthGrains served a copy of the Charging Order on Jeri Sycamore, as a member-manager of the LLC, on March 13, 2014. On March 10, 2012, EarthGrains also obtained a charging order with identical provisions against Leland Sycamore's interest in Mary Rae Sycamore LLC, another Sycamore family limited liability company that holds assets.

The LLC operating agreement requires all LLC distributions to be distributed to the owners based on their percentage ownership. Despite distributions to Jeri Sycamore since the Charging Order went into effect, the LLC has never made a payment to EarthGrains. Accordingly, in December 2014, EarthGrains filed a motion for contempt sanctions. At the time, the information presented to the court demonstrated a violation of the Charging Order. Because the Sycamores were not forthcoming with the financial information as required by the Charging Order, the court allowed EarthGrains to engage in additional discovery to demonstrate the amount of the Sycamores' violations. The court did not deny the motion without prejudice because of a failure to demonstrate contempt. The only reason the court denied the motion

without prejudice was because the motion would need to be renewed after the discovery was conducted and the extent of the contempt was documented.

EarthGrains conducted discovery but did not file a renewed contempt motion because Leland Sycamore filed a second appeal that was unsuccessful and EarthGrains' successor, Bimbo Bakeries, became engaged in another lawsuit against Leland Sycamore and others for subsequent trade secret and trade dress infringement. That lawsuit resulted in another jury verdict against Leland Sycamore and another permanent injunction. In that case, there are pending motions for attorney fees and a motion for judgment as a matter of law or for new trial.

EarthGrains renews its motion for contempt sanctions in this case, asking the court to hold Leland Sycamore, Jeri Sycamore, and Sycamore Family LLC in contempt of court for noncompliance with the Charging Order. EarthGrains also asks to be paid the equivalent of all distributions that have been made to Jeri Sycamore since the issuance of the Charging Order and that a receiver be appointed who can liquidate Leland Sycamore's interest in the LLC and pay the value obtained to satisfaction of EarthGrains' judgment.

**ANALYSIS**

Federal district courts have the "power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority . . . as . . . [disobedience or resistance to its lawful writ, process, order, rule, decree, or command." 15 U.S.C. § 401. It is well-settled law that a "district court has broad discretion in using its contempt power to require adherence to court orders." *Consumers Gas & Oil, Inc. v. Farmland Indus.*, 84 F.3d 367, 370 (10th Cir. 1996).

In order to hold a party in civil contempt, a court must find clear and convincing evidence that "(1) the order at issue was valid and enjoined conduct in reasonable detail; (2) the enjoined

party had actual knowledge of the order through personal service or otherwise and was subject to it; and (3) the enjoined party disobeyed the order." *Clear One Communications, Inc. v. Chiang*, 670 F. Supp. 2d 1248, 1281-82 (D. Utah 2009). "In civil contempt proceedings, disobedience of the order need not be willful. Rather, 'a [d]istrict court is justified in adjudging a person to be in civil contempt for failure to be reasonably diligent and energetic in attempting to accomplish what was ordered.'" *ClearOne*, 670 F. Supp. 2d at 1282.

In this case, under this court's Charging Order, EarthGrains is entitled to all distributions that should be made to Leland Sycamore in accordance with his ownership interests in the LLC. The LLC's Operating Agreement requires distributions to be made to all members in proportion to their ownership interest. The LLC's failure to make proportional distributions can only be seen as an effort to block EarthGrains from receiving LLC funds due under the court's Charging Order. Leland Sycamore, Jeri Sycamore, and the Sycamore Family LLC are all well aware of the requirement under the Charging Order.

The court's Charging Order is clear, and the LLC's failure to pay EarthGrains funds due to Leland Sycamore violates the Charging Order. The Sycamores ignore the vast majority of the evidence EarthGrains submits and contest only a few evidentiary citations on relatively minor matters given the breadth of the Sycamores' obstruction over a period of many years. The Sycamore Family LLC has made substantial distributions to Jeri Sycamore without making the requisite payments to EarthGrains in proportion to Leland Sycamore's membership interests in the LLC. These distributions run into the hundreds of thousands. In addition, Jeri Sycamore and members of her family use LLC assets without compensation to the LLC, such as allowing

family members to live rent free in LLC homes and condominiums.[1]  Even if these practices are not currently ongoing, they have occurred and the practice effectively gives family members de facto distributions.  This conduct also shows the Sycamores' lack of adherence to corporate structure and duties.

The Sycamores argue that the information EarthGrains relies on is outdated.  However, the Charging Order requires the LLC to provide EarthGrains with financial information.  EarthGrains does not have updated information because the Sycamores have failed to comply with the Charging Order's requirements.  The Sycamores claim that there is no urgency to EarthGrains' request, but the Sycamores have had a constant and continuous duty to comply with the court's order.  The only parties to benefit from EarthGrains' delay in moving forward with its contempt motion is the Sycamores.  EarthGrains' delay does not provide the Sycamores with a basis for ignoring the Charging Order.  A party is charged with complying with an order from that date it is entered, not just when the opposing party chooses to move for contempt for noncompliance.  EarthGrains has a right to collect on its judgment, and the Sycamores are required to comply with this court's orders.

The Sycamores also suggest that there is need for another round of discovery into the operations of the LLC and compliance with the Charging Order.  However, there is no reason for the court and the parties to engage in endless rounds of discovery when the Sycamores simply need to comply with the payment and financial disclosures required in the Charging Order.

---

[1] The LLC argues that Jeri Sycamore lived rent free as the caretaker of an $800,000 home "while it appreciated."  But her care taking duties do not equal market rent.  Therefore, Jeri Sycamore received a substantial benefit from the LLC that was not given to the other LLC members.  There are significant de facto LLC distributions the Sycamores cannot escape.

EarthGrains has presented evidence that payments are being made to other members of the LLC and EarthGrains has not received its proportional distribution. The contempt is clear even if the exact amount is not. The court cannot and will not overlook the Sycamores' past and continued violations of the Charging Order or condone their delay tactics.

The Sycamores attempt to lessen the amount of their contempt by alleging that they have been putting money for EarthGrains in a separate account. However, nothing in the Charging Order refers to or provides for a separate account. The Sycamores did not seek permission from the court to put money in a separate account. The Charging Order clearly requires the Sycamores to make distributions to EarthGrains. It does not provide for the Sycamores to hold the money until this court orders them to make payment. Moreover, the Sycamores do not present the court with financial records demonstrating the propriety of the amounts they are setting aside, financial records that should have been provided to EarthGrains in compliance with the Charging Order. The Sycamores do not claim to misunderstand the requirements of the Charging Order. EarthGrains is entitled to collect on its judgment and this court's Charging Order already ordered the Sycamores to make the payments to EarthGrains. Requiring the court to order you to comply with a prior order before you comply with it is textbook contempt.

The parties dispute whether this court previously made a determination as to whether Jeri Sycamore's distributions were actually management fees. However, the court explained in its last order that there was no basis for the LLC to be paying Jeri Sycamore management fees. There is no evidence of any management services she provided or her qualifications for providing such services. Mrs. Sycamore had no contractual arrangement to compensate her for asset management and there was evidence that she used outside third parties to conduct most of

the management work for the LLC. On tax returns, the LLC's accountants have treated the LLC's payments to Jeri Sycamore as distributions rather than management fees. Moreover, Jeri Sycamore treated the LLC accounts as if they were her own personal account and had no regard for the corporate structure. The evidence before the court demonstrates that she simply took money from the LLC when she wanted it. That does not comport with a salary for management duties. After the last hearing, the LLC apparently started paying Jeri Sycamore a set monthly fee. However, there is still no evidence that she had an agreement with the LLC or that the fees correlated with the duties she performed. The Sycamores have never demonstrated a basis for paying Jeri Sycamore for management fees.

The LLC now claims that two of Leland and Jeri Sycamore's children are managing the LLC and being paid $12,000 per month for their services. However, the LLC has again failed to present a management agreement between the LLC and the children or an explanation of what duties the children are performing to justify the monthly fees the LLC pays to them. The Sycamores have also failed to demonstrate that they complied with the LLC's Operating Agreement to make the change in management.

Since the court's last order, the Sycamores also claimed that the payments from the LLC to Jeri Sycamore were not distributions or management fees, but loans. The LLC's most recent tax returns show amounts paid to Jeri Sycamore as loans. None of the usual documents that would accompany a loan exist for any funds paid to Jeri Sycamore. Moreover, Jeri Sycamore is not making any loan payments to the LLC and she freely admitted that she has no idea if she is supposed to pay any of the money back to the LLC. In fact, even if the money was a loan, Jeri Sycamore would be unable to repay the loan without withdrawing money from the LLC to fund

the payment. She and Leland Sycamore do not claim to have assets outside the LLC. Moreover, the characterization of the money as loans appears to help minimize Jeri Sycamore's reported income for tax and social security purposes. Despite EarthGrains' arguments to this effect, the Sycamores did not present any evidence that the payments are actually loans. Therefore, the characterization of payments as loans from the LLC to Jeri appears to be yet another way to circumvent EarthGrains' rights as a judgment creditor.

The Sycamores also title personal assets, like their home, in the name of the LLC but do not list them as property of the LLC in accounting and tax records. The LLC does not have basic accounting procedures and records in place. After the court's hearing on these pending motions, Tyler Sycamore submitted a supplemental declaration stating that a $4.5 million home has always been valued by the LLC at $0. He stated that he has no knowledge of why the home is valued at $0. And as the new manager of the LLC, he has seen no reason to change the valuation despite the fact that he knows the county assessor values the home for tax purposes at $2.9 million. Not only is there evidence of a lack of proper financial records, there is evidence of questionable accounting practices. EarthGrains alleges that an accountant for the LLC fired the Sycamores as clients because of their failure to adhere to basic accounting practices.

In addition to payments on the final judgment, prior to trial in this case, the court found Defendants in contempt for resuming their sale of bread under the Sycamore brand and granted EarthGrains compensatory damages and attorney fees. Although the court imposed those contempt damages prior to trial, Defendants have never satisfied any of the amounts awarded. Defendants know that these amounts have been due and owing since before the trial and make no attempt to explain why there has been no payment. Their complete failure to make any payments

under the court's order constitutes contempt.

Leland Sycamore claims that EarthGrains has failed to establish that he has violated this court's orders. The court agrees that contempt sanctions are not warranted simply because a judgment debtor has not paid a judgment. But, despite his assertions to the contrary, there is evidence that he is involved in the failure to comply with the court's orders. Leland currently claims to have had no involvement in the LLC since the time he set it up. This assertion is belied by the fact that he made himself a co-manager of the LLC at that same time. Jeri Sycamore testified that the outside managers preferred to work with Leland on LLC matters. As a co-manager of the LLC, Leland Sycamore has the responsibility to make sure that the LLC complies with the court's Charging Order. The LLC's Operating Agreement designates Leland Sycamore as one of the managers of the LLC. He admitted that he and his wife are listed as co-managers of the LLC. As such, he has duties to ensure compliance with court orders. The Sycamores have not provided any evidence demonstrating that an actual change in management has been made or that the Operating Agreement was complied with in making the change.

In the fraudulent transfer lawsuit, EarthGrains obtained evidence demonstrating that Leland Sycamore has consistently been active in managing LLC affairs and assets during the time period that he claims that other family members have had those management functions. Leland and his family have worked together to make Leland appear to be judgment proof even though he is a multimillionaire. The family has rearranged its finances to make it appear that Leland has no possessions and no income. It then rearranged finances to make it appear that Jeri Sycamore has no income. Yet somehow Leland and Jeri Sycamore live in comfort despite their lack of income or assets. Leland Sycamore cannot claim that he is not responsible for the LLC's

failure to comply with the court's Charging Order. Everything being done by the family appears to be being done with the overriding purpose of advancing Leland's interests in not paying the judgment against him.

Based on the above circumstances, the court concludes that there is clear and convincing evidence that Leland Sycamore, Jeri Sycamore, and the Sycamore Family LLC are in willful contempt of the court's Charging Order. Having held a party in civil contempt, the court may then impose sanctions for the purpose of achieving "either or both of two distinct remedial purposes: (1) to compel or coerce obedience to a court order . . . ; and (2) to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance." *O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1210-11 (10th Cir. 1992). When determining the proper amount of a coercive sanction, "the court must consider 'the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired.'" *Id.* at 1211.

EarthGrains' actual loss is the amount it would have received had the LLC distributed corresponding funds to EarthGrains that it made to Jeri Sycamore. Because of the Sycamore's failure to comply with the Charging Order's requirements to turn over relevant financial information and their disregard for corporate structures or recordkeeping, the exact amount of the contempt is unknown. Accordingly, EarthGrains requests that the court appoint a receiver to (1) assume all rights and powers granted to Leland Sycamore as a member-manager of the LLC under the LLC's Operating Agreement; (2) conduct an accounting of all the distributions that the LLC has made to Jeri Sycamore since the court entered the Charging Order; and (3) immediately transfer that same amount to EarthGrains up to satisfaction of judgment.

The court recognizes that the appointment of a receiver can be considered a drastic remedy. *Wing v. Horne*, 2009 WL 2929389, *3 (D. Utah Sept. 8, 2009). However, the court agrees with EarthGrains that the Sycamores' and the LLC's nebulous finances coupled with the repeated management changes and procedural maneuvering fits squarely within the circumstances for appointing a receiver. "The appointment of a receiver in a diversity case is a procedural matter governed by federal law and federal equitable principles." *World Fuel Servs. Corp. v. Moorehead*, 229 F. Supp. 2d 584, 596 (N.D. Tex. 2002). Rule 66 of the Federal Rules of Civil Procedure recognizes that the Federal Rules of Civil Procedure govern an action in which a receiver is appointed and that the administration of the receivership should "accord with the historical practice in federal courts or with a local rule." Fed. R. Civ. P. 66. The District of Utah has no local rules pertaining to receivers. Thus, the court must be guided by federal common law traditions applicable to receivers.

Factors courts consider in appointing a receiver include: "(1) the validity of the claim of the party seeking a receiver; (2) the probability that fraudulent conduct has occurred or will occur to frustrate that claim; (3) imminent danger that property will be concealed, lost, or diminished in value; (4) inadequacy of legal remedies; (5) lack of a less drastic remedy; and (6) the likelihood that appointing a receiver will do more harm than good." *Id.*

Each of the factors to consider in determining whether to appoint a receiver supports the appointment of a receiver in this case. Earthgrains has a valid final Judgment and has documented fraudulent conduct that has occurred to frustrate EarthGrains' ability to collect on the Judgment. The Sycamores put almost all their assets into the LCC and have used the LLC to shield the assets from Leland's creditors. Leland then attempted to transfer his interest in the

11

LLC and brought a lawsuit to get out of paying the judgment in this case. However, Judge Nuffer found the transfer to be fraudulent and ineffective.

In addition to that case, the LLC has taken every position possible in this case to keep from making any payments to EarthGrains. Defendants have not paid anything on the Judgment or past contempt order and ask the court to believe that Leland Sycamore has no assets and no income. Corporate structures can provide protection, but the Sycamores appear to be using the structure to shield all their assets and income from known creditors. The Sycamores previously claimed that Jeri Sycamore received money from the LLC for "management fees" instead of as distributions because distributions would have to be made equally to each member based on proportional ownership. When the court questioned the management fee claims, the Sycamores switched managers to two of their adult children. Now the Sycamores claim that Jeri Sycamore is no longer receiving money from the LLC and neither she nor Leland have any access to the LLC accounts. The Sycamores have not attempted to explain to the court how Leland and Jeri Sycamore are currently living with all their assets in the LLC, no income, and no access to LLC accounts. Meanwhile, two of their children are now paid $12,000 per month to oversee LLC management while the LLC continues to pay outside accountants and other professionals as well.

The change in management appears to be an attempt to take LLC management decisions away from the person who owes the Judgment. But, despite Leland Sycamore's lack of management power or access to LLC accounts or assets, the LLC has still failed to comply with the court's Charging Order. Even if the current managers have an interest in complying with the order in the future, they have made no attempt to comply since supposedly taking over and made no attempt to amend the LLC's past mistakes with compliance. When questioned about the

propriety of their actions in motions such as the present motion for contempt, the Sycamores provide no information to the court to explain the circumstances or give any transparency.

Throughout all of this there has been no documentation to support the Sycamores' claims regarding LLC management or operations. The LLC's Operating Agreement spells out a specific succession plan in the event that Leland and Jeri are unwilling or unable to serve as co-managers–Mary Nicole Sycamore is to serve as sole manager. There is no documentation of managers resigning or being unanimously voted out. With respect to LLC record keeping, the Sycamores represent that Jeri Sycamore received $62,690 in management fees from March 2014 to December 2, 2014, but they provide no representations about all of 2015. The sporadic and random disclosure of information is inconsistent and troubling. In addition, EarthGrains has demonstrated instances where the LLC has potentially engaged in tax fraud and the LLC has taken no steps to correct past tax filings. The complete lack of documentation and transparency, especially with respect to the management of the LLC, supports the appointment of a receiver.

The LLC argues that a receiver is unnecessary because EarthGrains requests a sum certain to be paid to it and there is no evidence that the LLC does not have the funds to pay that amount. However, the financial information the LLC provides to the court is contradictory depending on the issue being discussed. Moreover, the lack of transparency by the LLC makes it impossible for the court to determine the amount that should be properly distributed to EarthGrains. And, despite the requirements of the Charging Order, the LLC provides no comprehensive documentation of the sum certain that is due and owing to EarthGrains. The LLC claims that it has a separate account with funds intended for distribution to EarthGrains, but the LLC does not provide documentation regarding the amounts in the account and the amounts do not appear to be

equal to the amount of distributions made to Jeri Sycamore since the entry of the Charging Order. Moreover, the amount the Sycamores are willing to pay EarthGrains to avoid a receiver changed between the briefing of the motion and the hearing on the motion. While the court can appreciate their desire to avoid a receiver, the fluctuating amounts demonstrate that the LLC is not properly accounting for its funds and likely has not attempted to determine the exact amount due to EarthGrains. A receiver can review the LLC's accounts and determine the amount due, which the management has been either unable or unwilling to provide to the court. The court concludes that EarthGrains has met the second factor to consider in appointing a receiver because there is significant evidence in this case regarding the probability that fraudulent conduct has occurred or will occur to frustrate EarthGrain's rightful claim to payment of its Judgment and collection under the Charging Order.

Next, the risk that the LLC is diminishing or concealing assets that could potentially satisfy EarthGrains' judgment is real, continuous, and thus the court considers it imminent. The LLC has been making distributions without giving any to EarthGrains and without providing documentation. Moreover, the Sycamores have a history of making de facto distributions to family members that are not considered distributions. There is a constant danger that the LLC property will be concealed, lost, or diminished in value. The Sycamores know that their lack of record-keeping and documentation can allow them to hide what is happening. The loss of value in the LLC since it was formed shows that there is a continual loss of revenue. Additionally, the LLC values some properties at nothing. Arguably, if an asset is valued at nothing it allows you to assert that the value of it is not diminishing. However, if that asset is actually worth $3 million, a valuation of nothing is not only bad practices but potentially fraudulent. One of the

14

current managers of the LLC not only does not know why the home is valued at nothing but sees no reason for changing the valuation. Such representations demonstrate the lack of interest the LLC has in the value of its property. The Sycamores' complete lack of respect for the corporate form and structure requires a receiver. A receiver will bring transparency and consistency to the LLC's financial management and enable the Sycamores to comply with the court's Charging Order.

The next factor deals with whether legal remedies are inadequate. EarthGRains has had its Judgment for six years and a Charging Order to assist in the collection of that Judgment for four years. The fact that the Charging Order has been in place for four years and the Sycamores have not made a single payment to EarthGrains demonstrates that EarthGrains' available legal remedies have been inadequate. At this point in the process, EarthGrains has demonstrated that the court needs to exercise its equitable powers to appoint a receiver.

As to whether there is a less drastic remedy in this situation, the Sycamores argue that the court should appoint a special master instead of a receiver. The Sycamores have filed a separate motion seeking appointment of a special master under Rule 53 of the Federal Rules of Civil Procedure. Under the rule, a special master can be used in post trial matters. But a special master can only make or recommend findings of fact based on submissions by the parties. A special master could oversee additional discovery and fact finding procedures. However, with a special master, the Sycamores could delay the proceedings even further and put the case in an endless discovery merry-go-round, a result that the court has already rejected. The court has already documented that the Sycamores delay tactics and lack of transparency. The Sycamores simply are not forthcoming with information even when an issue is before the court. A special

master is an insufficient remedy in a case such as this involving long-standing violations of the court's orders. Moreover, a special master in this case would lack the power to conduct critical tasks. A receiver can become involved in the organization, review the actual accounts and assets, make an accounting, determine what distributions are due to be made to EarthGrains, and take action to recover amounts owed to the LLC.

The Sycamores claim that a special master is sufficient because the LLC is currently well run. But the assertion is not consistent with the evidence presented to the court. The record in this action as well as the record in the action before Judge Nuffer is replete with LLC mismanagement. The evidence shows repeated failures to keep LLC and personal financial transactions separate, a complete lack of record-keeping, knowingly inaccurate tax returns, mischaracterizations of payments, failures to make required payments, and falsifying or back dating transaction records. In the face of this evidence, the Sycamores offer the court nothing more than vague, self-serving claims.

In addition, the current "managers" appear to have been complicit in Leland Sycamore's avoidance of the judgment. The current managers claim to have money in an account for EarthGrains, which is itself a violation of the Charging Order. The money has been due and owing for years. A Special Master would be too limited in this situation. Only a receiver, with the authority proposed by EarthGrains, can conduct the proper financial analysis and bring the LLC into compliance with the Charging Order.

On the final factor, the court finds no evidence to suggest that a receiver will do more harm than good. The Sycamores assert that a receiver is costly but there is no evidence that the special master requested by the Sycamores would cost significantly less. Without a receiver, the

LLC has not paid a penny for over four years. A receiver can make amends and make sure the Charging Order is complied with going forward.

The Sycamores further claim that the LLC is a Nevada entity and Nevada law limits the actions this court can take to assure compliance with the court's prior orders. But the underlying conduct related to an attempt to defraud EarthGrains as a creditor is not considered the internal affairs of the LLC and would not be governed by Nevada law. *Wasatch Oil & Gas LLC v. Edward A. Reott*, 2011 UT App 152, ¶ 3, 263 P.3d 391, 393 (Utah Ct. App. 2011). Moreover, federal law and equitable principles govern the appointment of a receiver. *World Fuel Servs. Corp. v. Moorehead*, 229 F. Supp. 2d 584, 596 (N.D. Tex. 2002).

Given the above analysis, the court concludes that all the factors to consider in appointing a receiver support the appointment of a receiver in this case. A special master is not a viable alternative given the circumstances explained above. Accordingly, the court will grant EarthGrain's request for appointment of Wayne Klein as the receiver in this case and enter a separate order setting forth his authority and responsibilities.

To the extent the receiver's accounting does not satisfy the judgment, EarthGrains requests that the court grant the receiver all necessary powers to foreclose the Charging Order lien against Leland Sycamore's 48% ownership interest in the LLC. Under Utah Code Ann. § 48-3a-503(3), if a judgment creditor makes a "showing that distributions under a charging order will not pay a judgment debt within a reasonable time, the court may foreclose the lien and order the sale of the transferable interest." In accordance with this statute, the Charging Order in place in this case provides for the court to order a foreclosure of Leland Sycamore's membership interests in the LLC, upon EarthGrains' request, to the extent the judgment is not fully satisfied

by Leland Sycamore's charged rights and interests in the LLC.

While a foreclosure of Leland Sycamore's interest in the LLC may be a viable option to pursue at a later date, the court declines to order the power of foreclosure prior to the receiver's accounting and review of the LLC and his efforts to bring the LLC into compliance with the Charging Order. After the receiver has taken all the necessary steps to bring the LLC into compliance with the Charging Order, the court would prefer to be involved again prior to granting the right to foreclose Leland Sycamore's interest. The parties currently disagree as to the law applicable to foreclosing Leland Sycamore's interest. If the Sycamores are correct and Nevada law is applicable to foreclosing on Leland Sycamore's interest, the receiver will be able to obtain information relevant to a reverse piercing of the corporate veil and present it at that later date.[2]

Given the court's finding of contempt, EarthGrains asks the court to impose additional coercive sanctions and attorney fees in addition to the appointment of the receiver. The court believes the imposition of the receiver is adequate to ensure that the LLC will not again violate the court's Charging Order with respect to proper distributions. Therefore, the court declines to award coercive sanctions in addition to the outstanding judgment and sanctions award already due. The court, however, will award EarthGrains some attorney fees given the substantial work EarthGrains has been required to do to collect on its judgment, most of which should have been

---

[2] Nevada "recognizes 'reverse piercing' where a creditor may reach a corporation's assets 'to satisfy the debt of a corporate insider based on a showing that the corporate entity is really the alter ego of the individual.'" *LFC Mktg. Grp., Inc. v. Loomis*, 8 P.3d 841, 846 (Nev. 2000). Courts have held that such reverse piercing "is particularly appropriate . . . when the controlling party uses the controlled entity to hide assets or secretly to conduct business to avoid the pre-existing liability of the controlling party." *Id.*

unnecessary. The court grants this award of attorney fees to demonstrate that there are consequences for the Sycamores' obstructionist behavior and to discourage any further gamesmanship by the Sycamores. The court, therefore, will award EarthGrains its attorney fees in connection with its renewed motion for contempt and the Sycamores' responsive motion regarding a special master. Leland Sycamore, Jeri Sycamore, and the Sycamore Family LLC are jointly and severally liable for the payment of these attorney fees. EarthGrains shall file the necessary documentation of its fees in connection with the motions at issue within fifteen days of the date of this Order. The court also notes, for purposes of its coercive effect, that the court will continue to award attorney fees for any future motions the Sycamores file that appear to be designed to obstruct or delay the collection of the judgment or any party's compliance with the court's Charging Order or other orders.

**Jeri Sycamore and the Sycamore Family LLC's Motion to Appoint Special Master**

The Sycamores ask the court to appoint a special master under Rule 53 of the Federal Rules of Civil Procedure, which authorizes the court to appoint a special master to address pretrial and posttrial matters. Fed. R. Civ. P. 53(a)(1)(3). In addition to the authority granted under Rule 53, the court retains broad equitable powers to appoint a "quasi-judicial officer such as a receiver, special master, or interim CEO." *Chen v. Stewart*, 2004 UT 82, ¶ 39. The court explained above that a receiver is more appropriate given the circumstances of this case. Given the court's decision to appoint a receiver and for the same reasons discussed above, the court denies the Sycamores' motion to appoint a special master.

## CONCLUSION

Based on the above reasoning, EarthGrains's Renewed Motion for Contempt Sanctions is

GRANTED, and Jeri Sycamore and Sycamore Family LLC's Motion for Special Master is DENIED. The court will separately enter an order appointing Wayne Klein as a receiver of the Sycamore Family LLC, and setting forth his authority and responsibilities. EarthGrains is directed to file its supporting documentation for attorney fees in connection with these pending motions within 15 days of the date of this Order.

DATED this 2d day of November, 2018.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge